IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No.: 23-cr-368 TNM |
| v. | : | |
| **JUSTIN LEE,** | : | |
| Defendant. | : | |

### GOVERNMENT'S AMENDED TRIAL BRIEF

The United States of America respectfully submits this trial brief in advance of trial before this Court in this case. The brief is divided below into a summary of the charges and elements (including relevant stipulations); a summary of the anticipated government witness testimony; and a discussion of certain legal issues anticipated to arise.

### Charges and Elements

Lee is charged in a seven-count indictment alleging two felony offenses and five misdemeanor offenses. The gravamen of the felony counts derives from Lee's actions at the Lower West Terrace entranceway beginning at approximately 4:45 p.m. on January 6, 2021. The parties have already submitted proposed jury instructions, *See* ECF Nos. 29 and 35.

**I.     Count One: Civil Disorder**

The parties agree that three elements are required to be proved beyond a reasonable doubt for this Court to find Lee guilty of count one. *See* ECF No. 29 and 35. The only disputes between the parties relate to definitions for "commerce" and "obstruct." Because the differences in the parties' position may not actually be dispositive in this case, it may be more appropriate for this Court to eschew providing resolution to these disputes until at the close of proofs.

II.     **Count Two: Assaulting, Resisting, or Impeding Officers**

Although the parties are in agreement to five elements, the defense seeks the additional, "Third, the defendant willfully attempted to inflict bodily injury upon the Officer or threatened to inflict bodily injury upon the Officer, which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily injury." ECF No. 33 p. 3.

Similar language was used in *United States v. Cua*, 657 F.Supp.3d 106 (D.D.C. 2023), where the parties, "agreed to *for the purposes of [that] proceeding*, the simple assault provision applies to an act that constitutes 'only' an 'intentional attempt or threat to inflict injury upon someone else, when coupled with an apparent present ability to do so, that places another in reasonable apprehension of immediate bodily harm . . ..'" 657 F.Supp.3d at 113 (emphasis added). But, at least in *Cua*, a mens rea of 'willfully' was not discussed.

Full discussion on (1) whether an assault is a required element to violate 18 U.S.C. § 111(a), and (2) whether *Cua* provides the correct definition of assault, would be better suited following the government's presentation of the evidence. Similarly, as provided in the 'anticipated legal issues' section of this brief, this Court has previously taken the opposite position. There would be no change in the government's presentation of the facts at trial that could be affected.

III.    **Counts Three, Four, and Five: Restricted Building or Grounds**

The parties disagree on the scienter requirement applying to the definitional provisions found in 18 U.S.C. § 1752(c). In *United States v. Griffin*, D.C. Cir. No. 22-3042, argued December 4, 2023, the Court of Appeals was presented with the question of where in the statute the 'knowingly' element reaches. Lee requests this Court find that the government must prove knowledge that a protectee was within the established perimeter entered into by Lee. This "legal

2

issue has produced divergent views on this Court, with several Judges, including [Hon. Beryl A. Howell], that the 'knowingly' *mens rea* requirement applies to the proscribed conduct and that such conduct occurred in an area that was fairly noticed as a 'restricted building or grounds.'" *United States v. Carnell*, 23-cr-139 BAH (D.D.C. Feb. 15, 2024), 2024 WL 639842, p. *6.

But, as this Court reasoned in *Griffin*, the knowingly element does not require a showing that the defendant knew a protectee was within the perimeter. This Court reasoned:

> that Congress specifically included a mens rea requirement in those portions of the statute laying out the elements of the offense, while excluding that mens rea requirement in the definitional provision. A defendant must act knowingly in committing the offense conduct identified in Subsections (a)(1) through (a)(5). Each of those subsections begins with the word 'knowingly.' By contrast, that limitation appears nowhere in the definitional provision of (c)(1).
> . . .
> And I should also say, it doesn't make a lot of sense to me that the government would have to prove somebody knew that a specific dignitary was there. I can't imagine that a provision that is looking to protect Secret Service protectees would require the Secret Service to somehow be telling people and proving that people knew which protectee was in the restricted area at what time.

Transcript of Bench Trial p. 331-32, *United States v. Griffin*, 21-cr-92 TNM (D.D.C. Mar. 22, 2022), ECF No. 106.

### Summary of Government Witness Testimony/Evidence

The government intends to call the following witnesses, and seek admission of the following exhibits, to provide evidence beyond a reasonable doubt that the defendant committed the charged offenses.

**United States Capitol Police Lieutenant Shawn Walton** will provide overview testimony regarding the events of January 6, 2021, as faced by the United States Capitol Police. The witness is likely to testify that the assemblage of more than 3 individuals presented an immediate danger of damage or injury to the property or person of at least one other individual.

3

The witness will also provide foundation testimony related to camera footage deriving from the United States Capitol Police Closed Circuit Television (CCTV) system. Further, the witness will likely testify as to how the functioning of the United States Capitol Police was affected by the events of January 6, 2021.

The witness will further provide foundation testimony related to open-source footage that also captured the events of January 6, 2021. One such exhibit, Gov. Ex. 511, is 9 minutes and 15 second clip depicting the actions outside of the Lower West Terrace Entrance, an entrance also known as the "tunnel." The exhibit depicts Lee igniting and throwing a device into the tunnel.



*Figure 1: Gov. Ex. 511 at 2:23*

The effects of the device included a large plume of smoke to fill the mouth of the tunnel, which will be further depicted within Gov. Ex. 510.



*Figure 2: Gov. Ex. 510 at 3:23.*

**David Sokoloff** will likely identify Lee in Court. The witness will testify that he knew Lee as his prior employer, and that agents from the FBI approached the witness with depictions from January 6, 2021. One of the depictions shown to the witness will be provided to this Court in Gov. Ex. 508B.



*Figure 3: Gov. Ex. 508B, a screenshot from Gov. Ex. 508 at 0:25*

5

The witness will likely testify that he indicated that the individual from the photograph was a previous employee and later left that employment to become a police officer.

**Metropolitan Police Officer Jason Sterling** will provide ground level testimony as one of the many officers within the tunnel during Lee's actions. The witness will likely describe the struggle already being endured by officers and continued to be experienced throughout the day. Also, the witness will likely testify that during his time at the Capitol on January 6, 2021, he was equipped with a Body Worn Camera that captured the events as he experienced them. The government will seek the admission of the footage, which depicts a concerted effort at approximately 4:46:35 p.m. for rioters to push past the officers lining the entrance. During this push, this witness's camera captures the device thrown by Lee striking this witness's shield.



*Figure 4: Gov. Ex. 600 at 1:44*

**United States Secret Service Inspector Lanelle Hawa** will provide overview testimony regarding the restricted area in place at the United States Capitol on January 6, 2021. The witness will likely testify that her role within the Liaison Division required her to coordinate visits of

6

Secret Service protectees to the United States Capitol. Specifically for January 6, 2021, that included her work coordinating the visit of then-Vice President Michael Pence.

The witness will also provide testimony regarding several proposed exhibits. In exhibit 300, the witness will likely explain that then-Vice President Michael Pence was scheduled to be within the restricted area on January 6, 2021, prior to that day itself. The witness will additionally provide overview testimony illustrating, in general terms, how then-Vice President Michael Pence was moved following the danger presented by the Capitol being breached. Finally, the witness will likely testify that the government function of protecting then-Vice President Pence was adversely affected by the riot.



*Figure 5*: Screenshot of proposed exhibit 302. Inspector Hawa circled in yellow. Then-Vice President Michael Pence circled in Red.

The witness finally will provide testimony of when he returned to preside over the joint session of Congress. She will outline that at all times during the day, then-Vice President Pence was within the secure perimeter around the grounds of the Capitol.

7

**Special Agent Joseph Perez** will likely testify that as part of his investigation, on behalf of the Federal Bureau of Investigation, that he was able to use the video databases, external online sources, and other means to identify Justin Lee as an individual that took part in the events of January 6, 2021. Further, as part of his investigation, he will likely testify that using those resources he was able to track—and cross reference—Lee's movements on and near the Capitol Grounds on January 6, 2021. This timeline of Lee's movements will provide evidence of Lee's intent to commit the criminal offenses charged within the indictment.

Through video and photographic evidence, the government will provide the Court with the following:

Prior to entering the restricted perimeter, Lee moved with the crowd early before the barricades were overran.



*Figure 6: Gov. Ex. 501 at 0:35*

Then, as the initial breach of the restricted perimeter was being effectuated, Lee stood on the Olmsted wall and observed as the line of snow fencing and bicycle rack was overran.



*Figure 7: Gov. Ex. 502 at 0:23*

Lee then crossed past the line and help and encourage others to do the same.



*Figure 8: Gov. Ex. 503 at 1:12*

Nearly an hour and a half later, Lee's encouragement to fellow rioters continued as a line of police on the West Plaza was overran. Again, Lee stood on a half-wall and waved others to overtake police.



*Figure 9: Gov. Ex. 506 at 2:46*

Lee made his way up the scaffolding and bleachers and observed the overran grounds and the violence occurring at the Lower West Terrace entrance. The government will again show that Lee during this period cheered on his fellow rioters.



*Figure 10: Gov. Ex. 507 at 0:56*

After he cheered during this period, Lee will then be shown to have changed his face covering to a gaiter-style Maryland flag face covering. At this point, Lee also attached to his front a military-style medical bag with two side pouches since his time on the West Plaza.



*Figure 11: Gov. Ex. 509B*

11

Lee then makes his way down to the Lower West Terrace tunnel.

The government will present exhibit 511, which depicts Lee's actions immediately outside the Lower West Terrace entrance. *See* Figure 1. The exhibit will depict Lee igniting and throwing a device that causes a plume of smoke at the tunnel entrance. Other video exhibits will show Lee also throwing several other objects into the tunnel. *See* Figure 12.



*Figure 12: Gov. Ex. 513B*

Lee later joined other rioters in "spotlighting" officers inside the tunnel with a flashlight until officers were able to retake the middle landing of the Lower West Terrace.



*Figure 13: Gov. Ex. 514 at 1:03*

Finally, the witness will likely testify as to the effect of the January 6, 2021, riot had on interstate commerce. In his investigation, the witness was able to review records from Albertsons Companies, the parent company of Safeway, Inc., that shows actual sales on January 6, 2021, did not meet the expected sales as compared to the company's projections, based in part on comparisons to the previous year.

**Anticipated Legal Issues**

Through extensive discussions with opposing counsel regarding the trial, as well as potential resolutions short of trial, the government believes there are several overarching legal issues that will be presented to this Court during trial. They are: (1) the amount of "force" under 18 U.S.C. § 111(a), to be considered "forcibly"; (2) whether the thrown object striking an officer's shield constitutes a "touching" under 18 U.S.C. § 111(a); and (3) whether a felony violation of 18 U.S.C. § 111(a) requires "an assault" as opposed to the other forcible acts that have been criminalized.

Because these anticipated legal issues will not affect how the government presents its case, a resolution to these anticipated issues may be better suited to be addressed during a charging conference or in a R. 29 context.

I.      **The Amount of Force Needed.**

In *United States v. Arrington*, 309 F.3d 40 (D.C. Cir 2002), the elements of a violation of 18 U.S.C. § 111(a) was provided as: "(1) forcibly; (2) assault, resist, oppose, impede, intimidate, or interfere with; (3) a designated federal officer; (4) while engaged in or on account of the performance of official duties." 309 F.3d at 44. The *Arrington* court further provided, "the adverb 'forcibly' in the first element of the offense modifies each of the prohibited acts specified in the

second element: that is, a defendant does not violate the statute unless he *forcibly* assaults or *forcibly* resists or *forcibly* opposes, etc." *Id*. (emphasis in original).

In *United States v. Frizzi*, 491 F.2d 1231 (1st Cir. 1974), a defendant was found guilty by a jury of a violation of 18 U.S.C. § 111(a) after a defendant was driving a vehicle alongside a stopped United States Postal Service mail carrier vehicle. As outlined by the court, "Defendant . . . spat in [United States Postal Service mail carrier]'s face." 491 F.2d at 1231. On appeal, the defendant in *Frizzi* argued "that spitting in the face does not amount to a forcible assault . . .." *Id*. at 1232. The Court of Appeals for the First Circuit disagreed.

It reasoned, "[Spitting] is an application of force to the body of the victim, a bodily contact intentionally highly offensive." *Id*. at 1232. The court further concluded, "The statute does not require the infliction of bodily injury." *Id*. That same reasoning applies in the present case.

Presently, it will be shown at trial that Lee threw a device at a line of officers. Much like in *Frizzi*, Lee used an application of force to the victim.

## II. What needs to be touched

The penalty provision of 18 U.S.C. § 111(a) reads: "and *where such acts involve physical contact with the victim* of that assault or *the intent to commit another felony*, be fined under this title or imprisoned not more than 8 years, or both." (emphasis added). Count two in the indictment alleges both, "where the acts in violation of this section involve physical contact with the victim and the intent to commit another felony." ECF No. 1 p. 2. At trial, the government will present evidence of both, but specifically for the 'physical contact' prong the thrown object involved physical contact.

A victim holding a shield is in a different position than a victim not holding a shield. But that different position affects the level of force applied to the victim, not whether there was 'physical contact.' Whether the defendant committed a violation of 18 U.S.C. § 111(a) when such acts involved physical contact with the victim does not require direct contact with the body of the victim. Examples of such findings are present in other January 6 cases:

In *United States v. Ryan Samsel, et al.*, 21-cr-537 JMC (D.D.C. February 9, 2024) (Hon. Jia M. Cobb) ECF No. 345 (Findings of Fact and Conclusions of Law), a defendant "attempted to rip a riot shield out of a USCP officer's hands while other rioters were yelling at and shoving police officers." *Samsel* ECF No. 345 p. 12. In *Samsel*, count twelve—alleging a violation of 18 U.S.C. § 111(a)—covered that event. The Court reasoned, "Mr. Samsel was not successful in taking the shield, but managed to pull the shield down and expose the officer's face and torso to the crowd." *Id*. at 45. The court continued, "the Court finds that Mr. Samsel's conduct involved physical contact with the officer and the intent to commit another felony." *Id*.

In *United States v. Matthew DaSilva*, 21-cr-564 CJN (D.D.C. July 19, 2023) (Hon. Carl J. Nichols), a defendant was charged with a violation of 18 U.S.C. § 111(a) during a violent push at the Lower West Terrace entrance. The court found, "Body cam footage shows DaSilva bending his knees, lowering his head and using his full body and body weight to push against and grab a riot shield. Officer [S.] struggled to hang on, given the amount of force DaSilva applied." Transcript of Bench Trial – Day 3, p. 17 ln. 1, *United States v. Matthew DaSilva*, 21-cr-564 CJN (D.D.C. July 19, 2023). The court continued, "I find beyond a reasonable doubt that DaSilva made physical contact with Officer [S.] during the assault. For the duration of the assault, DaSilva's hands were on a riot shield held by Officer [S.] and DaSilva made direct contact with Officer [S.]'s hand when he tried to block his use of OC spray." *Id*. at 18 ln. 15.

15

In *United States v. Feola*, 420 U.S. 671 (1975), the Supreme Court made clear that when enacting 18 U.S.C. § 111, "Congress intended to protect both federal officers and federal functions, and that indeed, furtherance of the one policy advances the other." 420 U.S. at 679. Such a goal would be frustrated if an individual could escape criminal liability merely because the federal officer chose to equip himself with a shield.

### III.     Whether 18 U.S.C. § 111(a) requires "an assault" for a felony violation

Similar arguments have been posed in other January 6 cases. In *United States v. Patrick McCaughey*, 21-cr-040 TNM (D.D.C. September 13, 2022) (Hon. Trevor N. McFadden), this Court was presented with this argument and reasoned, "the words of the statute appear clear enough to me. Section 111(a) explicitly refers to the acts in violation of Subsection (a)(1). To be sure, those acts encompass forcible assaults against officers. But they also cover forcible opposition, interference with and impeding officers." Transcript of Oral Ruling, *United States v. Patrick McCaughey, III., et al.*, 21-cr-40 TNM (D.D.C. September 13, 2022) (Hon. Trevor N. McFadden), ECF No. 638, p. 12, ln. 12.

This Court relied upon *United States v. Briley*, 770 F.3d 267 (4th Cir. 2014), and *United States v. Stands Alone*, 11 F.4th 532 (7th Cir. 2021) and concluded, "Both circuits convincingly reason from the text of the statute that the verbs other than 'assault' carry through into the felony provision of Section 111(a)." *McCaughey*, ECF No. 638, p.13, ln. 7. The Court should do the same in the present case.

**Conclusion**

At trial, the government will provide video evidence of the defendant's actions at the Capitol on January 6, 2021. At the conclusion, the government will ask the Court to find Mr. Lee Guilty of each count in the indictment.

Respectfully Submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   /s/ *Adam M. Dreher*
ADAM M. DREHER
Assistant United States Attorney
Michigan Bar No. P79246
601 D. St. N.W.
Washington, D.C. 20530
(202) 252-1706
adam.dreher@usdoj.gov

MATTHEW VIGEANT
Assistant United States Attorney
D.C. Bar No. 144722
601 D. St. N.W.
Washington, D.C. 20530
(202) 252-2423
matthew.vigeant@usdoj.gov